DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant Brandi Bauer, (Appellant) the natural mother of H.M.C. and H.V.C., appeals the trial court's judgment awarding Athens County Children Services (ACCS) permanent custody of her two children. First, she argues that the trial court erred by granting ACCS permanent custody "based solely on her mental health." The trial court did not base its *Page 2 
decision to award ACCS permanent custody solely upon Appellant's mental health. The court also referred to her prior termination of parental rights regarding another child. Furthermore, Appellant's mental health issues supports the trial court's decision to award ACCS permanent custody. Her schizophrenia renders her unable to properly care for the children. Thus, Appellant's first assignment of error is without merit.
 {¶ 2} Next, Appellant asserts that clear and convincing evidence does not support the trial court's finding that awarding ACCS permanent custody would serve the children's best interests. Because competent and credible evidence supports the trial court's determination that awarding ACCS permanent custody would serve the children's best interests, this assignment of error also is without merit. Therefore, we affirm the trial court's judgment.
 I. FACTS {¶ 3} Appellant suffers from schizophrenia and previously had her parental rights terminated with respect to another child. This case involves her two younger children.
 {¶ 4} On August 20, 2005, the trial court awarded ACCS emergency custody of H.M.C., and on August 22, 2005, ACCS filed a complaint alleging that the child is a dependent child. On November 2, 2005, the court *Page 3 
found the child to be a dependent child and awarded ACCS temporary custody.
 {¶ 5} On March 29, 2006, the child was returned to her parent's custody and the court granted ACCS a protective supervision order.
 {¶ 6} On August 3, 2006, Appellant had another child, H. V.C.
 {¶ 7} On September 15, 2006, the trial court awarded ACCS emergency custody of both H.M.C. and H.V.C. ACCS subsequently filed a complaint alleging H.V.C. to be a dependent child.
 {¶ 8} On September 18, 2006, ACCS moved to modify the protective supervision order of H.M.C. to temporary custody.
 {¶ 9} On October 17, 2006, the trial court adjudicated H.V.C. a dependent child.
 {¶ 10} On December 1, 2006, the trial court awarded ACCS temporary custody of both children.
 {¶ 11} On April 2, 2007, ACCS filed a motion for permanent custody of the two children. At the permanent custody hearing, the evidence showed that Appellant failed to control her schizophrenia by refusing to take her medication as prescribed and by not attending her counseling. Just before ACCS filed its permanent custody motion, Appellant overdosed on her medication. *Page 4 
 {¶ 12} ACCS caseworker Kira Schumm testified that the two children, age twenty-one months and nine months, both are hydrocephalic and have shunts in their heads. The oldest child has been in the current foster home for a total of approximately 15 months, and the youngest has been in the foster home for eight months. Schumm stated that the case plan required Appellant to stabilize her mental health, be a law-abiding citizen, attend 100 percent of visits with the children, and attend 100 percent of her medical appointments. Schumm testified that Appellant failed to follow her mental health counselors' recommendations and did not attend 100 percent of her visits or medical appointments. Schumm described Appellant's interaction with the children during visits as disengaged and stated that Appellant seemed anxious for the visits to end. She further explained that she believed allowing the children to be in Appellant's care was unsafe. She stated that during one of the visits, "[s]he kept talking about the children being wired. That we had wired the children and she was making reference to someone sitting on a fence blowing kisses at her and making her mad and she pointed to my supervisor and said Jennifer Hosek with her cape. She was just incoherent and, you know, she was pointing and shaking and her eyes were very wide and we just felt like that it wasn't safe for her to be visiting the children because of those behaviors." Schumm opined that Appellant is *Page 5 
incapable of taking care of the girls. She explained that both girls have special medical needs and require weekly physical therapy. Schumm stated that they need additional special care at home to practice the techniques learned in therapy. Schumm testified that Appellant's mental health is unstable and that "[s]he can't even meet her own needs." Schumm stated that the children "are very bonded to the foster parents" and that she thinks permanent custody is in the children's best interests.
 {¶ 13} Appellant testified at the hearing and her testimony is largely incoherent and erratic.
 {¶ 14} On May 22, 2007, the trial court awarded ACCS permanent custody of the two children. The court found clear and convincing evidence that awarding ACCS permanent custody would serve the children's best interests. Regarding the children's interaction and interrelationships with others, the court explained: "These children are very young (ages 21 months and 9 months). They both have lived almost exclusively with the current foster parents. They have a one-half sibling who is now in the permanent custody of ACCS. Both children appear to recognize the father and mother but they are not bonded with them. The relationship with the foster parents is excellent. There are no known biological family members who are suitable for consideration." *Page 6 
 {¶ 15} Regarding the second best interests factor, the children's wishes, the court found that the children are too young to express their own wishes. However, the guardian ad litem recommended that the court award ACCS permanent custody.
 {¶ 16} Regarding the children's custodial history, the court found:
 "[H.M.C.] was born on August 17, 2005. Because of [Brandi's] mental health, emergency custody was granted to ACCS three days later. [The child] was placed in foster care. On March 29, 2006, she was returned to the care of her parents with a PSO.
 [H. V.C.] was born on August 3, 2006, and when finally discharged on August 11, went home with Gary, Brandi, and [her] sister * * *. On September 15, 2006, emergency custody of both girls was awarded to ACCS, again because of mother's unstable mental health. Both girls were placed with the same foster family that had previously provided care for [H.M.C.]. They have remained there since that time."
 {¶ 17} Regarding the forth best interests factor, the court stated: "These infants need and deserve a legally secure and stable placement that can only be achieved with a grant of permanent custody to ACCS. Father has come to this realization himself after attempting this considerable task for several months and dealing with Appellant's mental instability. Both girls are medically fragile and hydrocephalic with shunts in their heads. Their normal development is already delayed and they require ongoing physical therapy to reach whatever optimal level of development will be. A stable, nurturing permanent home is their only hope." *Page 7 
 {¶ 18} Regarding the fifth factor, the court stated: "R.C.2151.414(E)(11) applies to mother as she previously lost parental rights to another child through involuntary proceedings * * *."
 {¶ 19} The court also determined, based upon R.C. 2151.414(E)(1), (2), and (11), that the children cannot or should not be returned to either parent within a reasonable time. The court stated: "Father has stipulated to the allegations in ACCS's motion for permanent custody and agrees with said disposition. Mother has a long and well documented history of schizophrenia. She has experienced multiple, and sometimes lengthy involuntary psychiatric hospitalizations. When an outpatient, her treatment and medication compliance has been very poor. She has not maintained many meaningful periods of compliance and stability. Because her disease is marked by paranoia and delusional thinking, she essentially becomes her own worst enemy when it comes to treatment. Even mental health professionals who have worked with her for years cannot gain consistent trust and compliance. She is highly dependent on others to provide for her own care."
 {¶ 20} The court found that "R.C. 2151.414(E)(11) applies to mother because of the involuntary permanent loss of parental rights of another of her children * * *." The court therefore granted ACCS permanent custody. *Page 8 
 II. ASSIGNMENTS OF ERROR {¶ 21} Appellant assigns the following errors:
 {¶ 22} I. "THE COURT ERROROUSLY [SIC] TERMINATED MOTHER'S PARENTAL RIGHTS BASED SOLELY ON HER MENTAL HEALTH."
 {¶ 23} II. "THERE WAS NOT CLEAR AND CONVINCING EVIDENCE FOR THE COURT TO FIND THAT IT WAS IN THE CHILDREN'S BEST INTEREST FOR PERMANENT CUSTODY TO BE GRANTED TO ATHENS COUNTY CHILDREN SERVICES."
 III. ANALYSIS {¶ 24} Appellant's two assignments of error both challenge the propriety of the trial court's decision granting ACCS permanent custody. Thus, we consider them together.
 {¶ 25} In her first assignment of error, Appellant asserts that the trial court erred by determining that her mental health rendered her unable to provide an adequate permanent home for the children and justified terminating her parental rights. She argues that the record does not contain any evidence regarding the severity of her medical diagnosis that would allow the trial court to conclude that she would be unable to provide an adequate permanent home for the children within a one year period. She further complains that it was improper for the court to award ACCS permanent custody based solely on her medical condition. *Page 9 
 {¶ 26} In her second assignment of error, Appellant contends that the record does not contain clear and convincing evidence to support the court's finding that awarding ACCS permanent custody would serve the children's best interests.
 A. APPELLATE STANDARD OF REVIEW {¶ 27} Initially, we note that an appellate court will not reverse a trial court's permanent custody decision if some competent and credible evidence supports the judgment. In re Perry, Vinton App. Nos. 06CA648 and 06CA649, 2006-Ohio-6128, at ¶ 40, citing State v. Schiebel (1990),55 Ohio St.3d 71, 74, 564 N.E.2d 54. Thus, our review of a trial court's permanent custody decision is deferential. See In re Hilyard, Vinton App. Nos. 05CA600, 05CA601, 05CA602, 05CA603, 05CA604, 05CA606, 05CA607, 05CA608, 05CA609, at ¶ 17. Moreover, "an appellate court should not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the findings of fact and conclusion of law." Schiebel, 55 Ohio St.3d at 74. Issues relating to the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact. As the court explained in Seasons CoalCo. v. Cleveland (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273: "The underlying rationale of giving *Page 10 
deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Moreover, deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." Davis v. Flickinger (1997), 77 Ohio St.3d 415, 419,674 N.E.2d 1159; see, also, In re Christian, Athens App. No. 04CA10,2004-Ohio-3146.
 B. STANDARD FOR GRANTING PERMANENT CUSTODY {¶ 28} A trial court may not award a children services agency permanent custody absent clear and convincing evidence. The Supreme Court of Ohio has defined "clear and convincing evidence" as: "The measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal."In re Estate of Haynes (1986), 25 Ohio St.3d 101, 103-04, 495 N.E.2d 23; see, also, Schiebel, *Page 11 55 Ohio St.3d at 74. In reviewing whether a trial court based its decision upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." Schiebel,55 Ohio St.3d at 74.
 C. PERMANENT CUSTODY PRINCIPLES {¶ 29} A parent has a "fundamental liberty interest" in the care, custody, and management of his or her child and an "essential" and "basic civil right" to raise his or her children. Santosky v.Kramer (1982), 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599; In reMurray (1990), 52 Ohio St.3d 155, 156, 556 N.E.2d 1169; see also, In reDA., 113 Ohio St.3d 88, 2007-Ohio-1105, 862 N.E.2d 829. A parent's rights, however, are not absolute. See DA. at ¶ 11. Rather, "`it is plain that the natural rights of a parent * * * are always subject to the ultimate welfare of the child, which is the pole star or controlling principle to be observed.'" In re Cunningham (1979), 59 Ohio St.2d 100,106, 391 N.E.2d 1034 (quoting In re R.J.C. (Fla.App. 1974), 300 So.2d 54,58). Thus, the state may terminate parental rights when a child's best interest demands such termination. DA., at ¶ 11.
 {¶ 30} Before a court may award a children services agency permanent custody of a child, R.C. 2151.414(A)(1) requires the court to hold a hearing. *Page 12 
The primary purpose of the hearing is to allow the court to determine whether the child's best interests would be served by permanently terminating the parental relationship and by awarding permanent custody to the agency. See R.C. 2151.414(A)(1). Additionally, when considering whether to grant a children services agency permanent custody, a trial court should consider the underlying principles of R.C. Chapter 2151:
 (A) To provide for the care, protection, and mental and physical development of children * * *;
 * * *
 (B) To achieve the foregoing purpose, whenever possible, in a family environment, separating the child from its parents only when necessary for his welfare or in the interests of public safety.
 D. PERMANENT CUSTODY FRAMEWORK {¶ 31} R.C. 2151.414(B)(1) permits a trial court to grant permanent custody of a child to a children services agency if the court determines, by clear and convincing evidence, that the child's best interest would be served by the award of permanent custody and that:
 (a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 (b) The child is abandoned. *Page 13 
 (c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
 {¶ 32} Thus, before a trial court may award a children services agency permanent custody, it must find: (1) that one of the circumstances described in R.C. 2151.414(B)(1) applies; and (2) that awarding the children services agency permanent custody would further the child's best interests.
 {¶ 33} In the case at bar, the trial court found that R.C.2151.414(B)(1)(a) applied. Therefore, we must consider whether the evidence supports the court's finding that the children could not be returned to Appellant within a reasonable time.
 E. REASONABLE TIME {¶ 34} R.C. 2151.414(E) requires the trial court to consider "all relevant evidence" and sets forth the factors a trial court must consider in determining whether a child cannot or should not be placed with either parent within a reasonable time. See R.C. 2151.414(B)(1)(a). If a court finds, by clear and convincing evidence, the existence of any one of the following factors, "the court shall enter a finding that the child cannot be *Page 14 
placed with either parent within a reasonable time or should not be placed with either parent":
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 (2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;
 * * * *
 (11) The parent has had parental rights involuntarily terminated pursuant to this section or section 2151.353 [2151.35.3] or 2151.415 [2151.41.5] of the Revised Code with respect to a sibling of the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense.
 * * * *
 (16) Any other factor the court considers relevant.
 {¶ 35} A trial court may base its decision that a child cannot or should not be placed with either parent within a reasonable time upon the existence of any one of the above factors. The existence of a single factor will *Page 15 
support a finding that a child cannot be placed with either parent within a reasonable time. See In re William S. (1996), 75 Ohio St.3d 95,661 N.E.2d 738; In re Hurlow (Sept. 21, 1998), Gallia App. No. 98 CA 6;In re Butcher (Apr. 10, 1991), Athens App. No. 1470.
 {¶ 36} Here, the trial court found that R.C. 2151.414(E)(1), (2), and (11) applied. Thus, Appellant's assertion that the trial court relied solely upon her mental illness in deciding to award ACCS permanent custody is meritless. The court also looked to her failure to remedy the conditions that caused the children's removal, i.e., her failure to control her illness through prescribed medication and treatment, and the involuntary termination of her parental rights with respect to another child. Either one of these factors, standing alone, supports the trial court's finding that the children cannot or should not be returned to Appellant within a reasonable time.
 {¶ 37} Furthermore, Appellant's reliance upon In re D.A.,113 Ohio St.3d 88, 2007-Ohio-1 105, 862 NE.2d 829, is misplaced. In that case, the Ohio Supreme Court held: "When determining the best interest of a child under R.C. 2151.414(D) at a permanent-custody hearing, a trial court may not base its decision solely on the limited cognitive abilities of the parents." Id. at syllabus. The parents in DA. had low IQs, which hampered their ability to function as parents. No evidence existed that the parents were *Page 16 
unable to provide an adequate permanent home for the child or that the child lacked adequate food, shelter, clothing, or care. The court determined that the trial court did not appropriately consider the best interests factors, but instead relied solely upon the parents' limited cognitive abilities. Thus, the court held that the court could not terminate the parental rights based solely upon the parents' limited cognitive abilities. The court noted other cases that terminated a parent's rights based upon limited cognitive abilities, but observed that in those cases, "objective evidence existed to show that the statute was satisfied." Id. at ¶ 37, citing In re CE., Butler App. Nos. CA2006-01-015 and CA2006-02-024, 2006-Ohio-4827 (the mother needed constant supervision and prompting to meet child's basic needs and had inadequate housing); In re King, Fairfield App. No. 05 CA 77,2006-Ohio-781 (the mother consistently relied on others to meet many of her basic needs and lost her housing).
 {¶ 38} Unlike in DA., here, ACCS presented objective evidence, other than Appellant's mental illness,[1] to show that the children could not or should not be returned to her within a reasonable time and that awarding ACCS permanent custody would serve the children's best interests. Appellant's mental illness required consistent medication, and she refused *Page 17 
to take her medication as prescribed. Her mental illness interfered with her ability to properly care for her two medically fragile children. The children require weekly physical therapy and as the ACCS caseworker testified, Appellant had difficulty meeting her own needs, let alone the children's needs. Furthermore, unlike the parents in DA., Appellant had her parental rights terminated with respect to another child. Additionally, as opposed to the trial court in DA., in this case the trial court appropriately considered all of the best interest factors, which we discuss next, and did not simply rely upon Appellant's mental illness.
 {¶ 39} Accordingly, Appellant's first assignment of error is without merit.
 F. BEST INTERESTS {¶ 40} R.C. 2151.414(D) requires a trial court to consider specific factors to determine whether a child's best interests would be served by granting a children services agency permanent custody. The factors include: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with *Page 18 
due regard for the maturity of the child; (3) the custodial history of the child; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any factors listed under R.C. 2151.414(E)(7) to (11) apply.[2] *Page 19 
 {¶ 41} In this case, competent and credible evidence supports the trial court's finding that awarding permanent custody to ACCS serves the children's best interests. First, the children's interaction and interrelationships with others supports the trial court's best interests finding. They live in a loving foster home where their medical needs are being met. Conversely, the ACCS caseworker testified that Appellant seemed detached during visitations with the children and that she was unable to adequately provide for their medical needs. Second, regarding the children's wishes, as the trial court noted, the children are too young to express their wishes. However, the guardian ad litem recommended that the court award ACCS permanent custody of the children. Third, with respect to the children's custodial history, the evidence reveals that they both have been in ACCS's temporary or protective custody, and in the same foster home, for the majority of their young lives. Fourth, the children need a permanent, secure home, which Appellant cannot provide. Her mental health impedes her ability to care for her two young children's special, medical needs. Finally, R.C.2151.414(E)(11) applies, in that Appellant had her parental rights involuntarily terminated with respect to another child. Thus, a balancing of the best interests factors shows that awarding permanent custody to ACCS would serve the children's best interests. While Appellant undoubtedly *Page 20 
loves her children, her mental illness sadly renders her unable to properly care for them. Consequently, the record contains ample competent, credible evidence to support the trial court's finding that awarding ACCS permanent custody serves the children's best interests.
 {¶ 42} Accordingly, we overrule Appellant's two assignments of error and affirm the trial court's judgment.
 JUDGMENT AFFIRMED. *Page 21 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Athens County Common Pleas Court, Juvenile Division, to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, J. and Kline, J.: Concurs in Judgment and Opinion.
[1] We assume for the sake of argument that Appellant's mental illness is comparable to the parents' limited cognitive abilities considered inD.A.
[2] R.C. 2151.414(E)(7) to (11) provide as follows:
 (7) The parent has been convicted of or pleaded guilty to one of the following:
 (a) An offense under section 2903.01, 2903.02, or 2903.03 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense was a sibling of the child or the victim was another child who lived in the parent's household at the time of the offense;
 (b) An offense under section 2903.11, 2903.12, or 2903.13 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense;
 (c) An offense under division (B)(2) of section 2919.22 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to the offense described in that section and the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense is the victim of the offense;
 (d) An offense under section 2907.02, 2907.03, 2907.04, 2907.05, or 2907.06 of the Revised Code or under an existing or former law of this state, any other state, or the United States requiring treatment of the parent was journalized as part of a dispositional order issued with respect to the child or an order was issued by any other court requiring treatment of the parent.
 (e) A conspiracy or attempt to commit, or complicity in committing, an offense described in division (E)(7)(a) or (d) of this section.
 (8) The parent has repeatedly withheld medical treatment or food from the child when the parent has the means to provide the treatment or food, and, in the case of withheld medical treatment, the parent withheld it for a purpose other than to treat the physical or mental illness or defect of the child by spiritual means through prayer alone in accordance with the tenets of a recognized religious body.
 (9) The parent has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times or refused to participate in further treatment two or more times after a case plan issued pursuant to section 2151.412
[2151.41.2] of the Revised Code.
 (10) The parent has abandoned the child.
 (11) The parent has had parental rights involuntarily terminated pursuant to this section or section 2151.353 [2151.35.3] or 2151.415 [2151.41.5] of the Revised Code with respect to a sibling of the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense. *Page 1