[Cite as *In re M.P.*, 2011-Ohio-6372.]

STATE OF OHIO, COLUMBIANA COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| M.P. | ) | |
| | ) | |
| | ) | CASE NO. 11-CO-4 |
| | ) | |
| | ) | OPINION |
| | ) | |
| | ) | |

CHARACTER OF PROCEEDINGS:      Civil Appeal from Court of Common Pleas, Juvenile Division, of Columbiana County, Ohio
Case No. J200900092

JUDGMENT:      Affirmed

APPEARANCES:
For Plaintiff-Appellee      Robert L. Herron
Prosecutor
Allyson Lehere
Assistant Prosecutor
105 South Market Street
Lisbon, Ohio 44432

For Defendant-Appellant      Attorney Scott C. Essad
5815 Market Street, Suite 1
Youngstown, Ohio 44512

JUDGES:

Hon. Gene Donofrio
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite

Dated: December 9, 2011

DONOFRIO, J.

{¶1} Appellant, Donna P., appeals from a Columbiana County Common Pleas Court, Juvenile Division decision terminating her parental rights and granting permanent custody of her daughter to appellee, the Columbiana County Department of Job and Family Services.

{¶2} M.P. was born to appellant and Scott J. on December 3, 2007. On January 14, 2009, appellee filed a complaint alleging M.P. was a neglected child. The complaint alleged that appellant used drugs in the family home in front of M.P., she left home for multiple days at a time, there was insufficient food in the home, and there was instability regarding utility service. The court granted appellee temporary custody of M.P. It later adjudicated her a neglected child upon the stipulation of both parents.

{¶3} Appellee put a case plan in place for appellant with the goal of reunification. Additionally, the court appointed a guardian ad litem (GAL) for M.P.

{¶4} On April 16, 2010, appellee filed a motion for permanent custody of M.P. The motion was originally set for hearing on October 5, 2010. However, appellant did not appear because she was subject to a subpoena in another court. At the hearing, Scott J. voluntarily surrendered his parental rights. The court then continued the hearing due to appellant's absence.

{¶5} The matter proceeded to a two-day hearing on November 23, 2010, and January 3, 2011. Appellant failed to appear for the second day of the hearing, though her counsel appeared and participated. The trial court found that appellant had continuously and repeatedly failed to substantially remedy the conditions identified as necessitating M.P.'s removal from her custody. The court found that M.P.'s best interest required a legally secure and permanent home, which could only be achieved by permanently terminating appellant's parental rights. Consequently, the court granted appellee's motion for permanent custody.

{¶6} Appellant filed a timely notice of appeal on February 4, 2011.

{¶7} Appellant raises a single assignment of error, which states:

{¶8} "THE EVIDENCE DID NOT SHOW BY CLEAR AND CONVINCING

EVIDENCE THAT M.P. WAS NEGLECTED TO THE EXTENT THAT DONNA P* * * SHOULD HAVE BEEN STRIPPED OF HER PARENTAL RIGHTS."

{¶9} Appellant argues the evidence was insufficient on several points to terminate her parental rights.

{¶10} First, she argues that contrary to the court's finding, the evidence demonstrated that she successfully completed drug and alcohol treatment.

{¶11} Second, she argues that the court erred in holding her appearance on The Jerry Springer Show against her. On a related point, appellant asserts that it was error for the trial court to allow appellee to introduce evidence of her appearance on The Jerry Springer Show because it was prejudicial to her and did not show any adverse effect on M.P.'s welfare.

{¶12} Third, appellant argues that the evidence was not clear and convincing that she was not working to remedy the conditions that caused the removal of M.P. from her home. She notes that she attended parenting classes and showed improvement in her program.

{¶13} Finally, appellant points out that while the GAL recommended permanent custody to appellee, she based her recommendation on her opinion that appellant was "not ready yet" to parent M.P. Appellant asserts that since the GAL used the word "yet," in conjunction with her efforts at completing her case plan, the court should not have stripped her of her parental rights.

{¶14} A parent's right to raise his or her children is an essential and basic civil right. *In re Murray* (1990), 52 Ohio St.3d 155, 157, citing *Stanley v. Illinois* (1972), 405 U.S. 645, 651. However, this right is not absolute. *In re Sims*, 7th Dist. No. 02-JE-2, 2002-Ohio-3458, at ¶23. In order to protect a child's welfare, the state may terminate parents' rights as a last resort. Id.

{¶15} We review a trial court's decision terminating parental rights and responsibilities for an abuse of discretion. *Sims*, 7th Dist. No. 02-JE-2, at ¶ 36. Abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude was arbitrary, unreasonable, or unconscionable. *Blakemore v.*

*Blakemore* (1983), 5 Ohio St.3d 217, 219.

**{¶16}** The trial court may grant permanent custody of a child to the agency if the court determines by clear and convincing evidence that it is in the child's best interest to grant permanent custody to the agency and that the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents. R.C. 2151.414(B)(1)(a). Clear and convincing evidence is evidence that produces in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. *In re Adoption of Holcomb* (1985), 18 Ohio St.3d 361, 368.

**{¶17}** "If the court determines, by clear and convincing evidence, * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

**{¶18}** "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. * * *.

**{¶19}** "(2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or *chemical dependency* of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing * * *." (Emphasis added.)

**{¶20}** The existence of a single R.C. 2151.414(E) factor will support a finding that a child cannot be placed with either parent within a reasonable time. *In re H.M.C.*, 4th Dist. No. 07CA18, 2007-Ohio-4661, at ¶35.

**{¶21}** The trial court found the factors listed above to exist in this case by clear and convincing evidence. First, it found that since M.P.'s removal, appellant "has continuously and repeatedly failed to substantially remedy those conditions and

circumstances identified as necessitating the removal of" M.P. from her custody. Second, it found that it was unlikely that appellant would be rehabilitated from her addiction and chronic use of marijuana within one year so that she would be able to adequately provide permanent care for M.P.

{¶22} In determining whether it is in the child's best interest to grant custody to the agency, the court shall consider:

{¶23} "(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

{¶24} "(b) The wishes of the child, * * * with due regard for the maturity of the child;

{¶25} "(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, * * *;

{¶26} "(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

{¶27} "(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child." R.C. 2151.414(D)(1).

{¶28} The evidence as to M.P.'s best interest supports the trial court's grant of permanent custody. The witnesses testified as follows.

{¶29} Michael McKeehan is an addiction therapist at The Counseling Center of Columbiana County. McKeehan stated that appellant was involved in two treatment regimens at his facility. (Tr. 6). The first regimen ran from early 2009 until mid to late 2009. (Tr. 6). He testified that appellant successfully completed this regimen including group therapy and random drug testing. (Tr. 6-7). But despite her completion of the program, McKeehan still had doubts about appellant's ability to remain clean and sober due to her associations and her living and family instability.

(Tr. 7). The second regimen began in June 2010, when she was once again referred by appellee. (Tr. 8). At that time, McKeehan found her to be cannabis dependent and at risk of a relapse. (Tr. 8). He testified that appellant did not complete this second regimen. (Tr. 8-9). He stated that appellant simply stopped showing up for her appointments. (Tr. 9).

**{¶30}** Cheryl Herr is a drug and alcohol counselor at the Family Recovery Center. She testified that appellant had two appointments in August 2010, but she cancelled one and failed to show up for the other. (Tr. 14, 19).

**{¶31}** Kathy Enterline is the Project SAFE coordinator at The Counseling Center of Columbiana. Project SAFE is a parent education program. Enterline testified that appellant was first referred to the program in April 2009. (Tr. 22). At that time she attended two out of twelve sessions and did not complete the program. (Tr. 22). Appellant restarted the program in August 2009, and this time attended four out of twelve sessions. (Tr. 22). Thus, once again she failed to complete the program. (Tr. 22). Appellant restarted the program for the third time in June 2010. (Tr. 22). This time appellant completed the program on October 7, 2010. (Tr. 22). She also completed the required homework assignments. (Tr. 24). Enterline testified that appellant verbalized that she wanted to be reunified with her daughter and displayed an understanding of the material presented. (Tr. 25). However, Enterline still had concerns about stability in appellant's life. (Tr. 25). Specifically, Enterline expressed concern over appellant's involvement with the legal system; her history of substance abuse; issues involving finances, transportation, and housing; and attachment issues between appellant and her daughter. (Tr. 26).

**{¶32}** Marybeth Peters is M.P.'s GAL. Peters testified that during the course of this case, appellant has had six addresses that she knew of. (Tr. 37). She stated that appellant lived at each of these residences for one to two months, which demonstrated a lack of stability. (Tr. 42-43). Peters also indicated that appellant has not had a job since M.P.'s birth. (Tr. 43-44).

**{¶33}** As to appellant's visits with M.P., Peters stated that appellant has been

very attentive. (Tr. 44). However, she also stated that M.P. runs to hug and greet her grandmother, who frequently accompanies appellant, but M.P. does not do the same with appellant. (Tr. 44). Peters noted that M.P. had been in appellee's care for 635 days and that appellant has seen her only 42 of those days. (Tr. 44). She expressed concern that this was not sufficient for them to build a bond. (Tr. 45). Peters stated that appellant only attended about one-half of her scheduled visits with M.P. (Tr. 45). She also testified that appellant's companionship time was suspended once when she was in the county jail and again when she failed a drug test. (Tr. 45). These suspensions cost appellant approximately nine months of visitation. (Tr. 45).

{¶34} Peters recommended that it was in M.P.'s best interest for the court to grant appellee's motion for permanent custody. (Tr. 46). She based this recommendation on her belief that M.P. needed stability and appellant had not been able to demonstrate that she could provide stability for M.P. (Tr. 46). Thus, although Peters stated at one point that appellant was not ready "yet" to parent M.P., she was clear in her recommendation that it was in M.P.'s best interest for the court to grant custody to appellee.

{¶35} Kelly Mercer is a social worker at the Columbiana County Department of Job and Family Services. She testified regarding appellant's case plan and her compliance, or lack thereof, with the plan. Mercer stated that the first concern in the case plan dealt with appellant's parenting practices, required her to complete Project SAFE, sign releases, and come up with a daycare plan for M.P. (Tr. 55-56). Mercer stated that appellant had signed all necessary releases. (Tr. 57). She stated that appellant had not presented a daycare plan. (Tr. 57). She also indicated that appellant completed the Project SAFE classes after two failed attempts. (Tr. 58). Mercer expressed concern, however, that it took appellant over 18 months to complete a 12-week class. (Tr. 59).

{¶36} Mercer stated that for a period of time from March 2009 until January 2010, appellant was doing well on her case plan and was not using drugs. (Tr. 62-63).

**{¶37}** As to visitation, however, Mercer testified that appellant was inconsistent in that she attended approximately 44 of her 97 scheduled visits with M.P. (Tr. 65). She stated that this did not include the two time periods when appellant's visitation was suspended. (Tr. 65). Mercer stated that appellant frequently attended the visits that were in East Liverpool but failed to show up for the visits that were in Lisbon. (Tr. 66). At the visits she observed, Mercer stated that it seemed M.P. would just run around and play while appellant watched. (Tr. 68-69).

**{¶38}** Another concern from appellant's case plan was her substance abuse. (Tr. 71). Mercer stated that appellant completed the necessary assessments and some initial classes. (Tr. 72). However, she stated that since that time appellant tested positive for marijuana on September 10 and November 19, 2009, and on February 18 and March 10, 2010. (Tr. 72-73). Additionally, appellant failed to submit to two other drug tests on July 14 and August 31, 2010, claiming she did not have the twenty dollars to pay for the tests. (Tr. 73-74). Mercer acknowledged that appellant did have a clean drug test in November 2010. (2d Tr. 10).

**{¶39}** The third concern from appellant's case plan dealt with self-protection and the ability to meet M.P.'s basic needs. (Tr. 77). Mercer indicated that appellant has not been employed since this case began. (Tr. 78-79). She also stated that appellant does not have a high school diploma or a GED. (Tr. 81). Mercer further testified that appellant had been incarcerated for 71 days on an aggravated robbery charge and a probation violation. (Tr. 80-81). Given appellant's lack of employment, Mercer stated that she was not sure how appellant lived from day to day and did not believe appellant could support M.P. (Tr. 82-83). Additionally, Mercer stated that appellant had seven addresses since she had been involved in the case. (Tr. 84). Mercer also expressed concern over appellant's current boyfriend who had nine criminal charges pending. (Tr. 91). And she noted that appellant had appeared on The Jerry Springer Show. (Tr. 92). Mercer stated that appellant missed her visit with M.P. to travel to Chicago to be on the show. (Tr. 92-93).

**{¶40}** Finally, Mercer opined that it was in M.P.'s best interest to grant

permanent custody to appellee. (Tr. 98). She stated that M.P. was doing very well in her foster home, she was attached to and bonded with her foster family, and her foster parents wanted to adopt her. (Tr. 98).

**{¶41}** Brenda Simmons is the housing manager at the Columbiana Metropolitan Housing Authority. Simmons stated that appellant was currently a resident at one of the housing developments. (2d Tr. 12). However, Simmons testified that she was going to evict appellant for allowing a person onto the Housing Authority property who did not have permission to be there. (2d Tr. 14). She stated that appellant's boyfriend was not permitted on the premises, but he had been there nonetheless. (Tr. 14).

**{¶42}** Appellant did not testify. And as the trial court noted, she did not even appear for the second day of the hearing. This in itself is telling of appellant's lack of commitment to her daughter.

**{¶43}** The applicable statutory best interest factors support the court's determination.

**{¶44}** First, M.P. has bonded with her foster parents and their family. Further, her foster parents wish to adopt her. And appellant has not bonded with M.P. This could certainly be due to the fact that she has missed half of her scheduled visits.

**{¶45}** Second, at the time of the hearing, M.P. had been in appellee's temporary custody for almost 22 consecutive months.

**{¶46}** Third, both appellant's caseworker and M.P.'s GAL testified that M.P. is in need of a legally secure placement and that it is in her best interest that the court grant permanent custody to appellee.

**{¶47}** In addition to the statutory factors, other factors further support the court's determination.

**{¶48}** For instance, contrary to appellant's assertion, the evidence did not demonstrate that she had continued success with the drug and alcohol treatment. Appellant initially successfully completed the required program. However, she then had numerous positive tests for marijuana, failed to submit to two drug tests, and

effectively dropped out of her treatment program.

**{¶49}** Furthermore, while appellant did make some progress in her case plan by completing her parenting classes, there were many other areas of the case plan in which she showed no signs of progress. For instance, appellant was required to and failed to, find employment, maintain stable housing, and find suitable day care. Additionally, appellant was incarcerated for several months and had a boyfriend who was also involved with the law.

**{¶50}** As for appellant's appearance on The Jerry Springer Show, the court merely mentioned it in a laundry list of reasons why appellant lead an irresponsible life style. Additionally, at the hearing, appellant did not object to this testimony.

**{¶51}** Based on all of these factors, we cannot conclude the trial court abused its discretion in granting appellee permanent custody of M.P. Accordingly, appellant's sole assignment of error is without merit.

**{¶52}** For the reasons stated above, the trial court's judgment is hereby affirmed.

Vukovich, J., concurs.

Waite, P.J., concurs.