STATE OF OHIO, HARRISON COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| S.B. | ) | CASE NO. 13 HA 3 |
| DOB 1-5-03 | ) | |
| A DEPENDENT CHILD. | ) | OPINION |
| | ) | |

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| K.B. | ) | CASE NO. 13 HA 4 |
| DOB 6-23-01 | ) | |
| A DEPENDENT CHILD. | ) | OPINION |
| | ) | |

CHARACTER OF PROCEEDINGS:      Civil Appeal from Harrison County
Common Pleas Court,
Case Nos. 20123002 and 20123001.

JUDGMENT:      Reversed and Remanded.

APPEARANCES:
For Appellant:      Attorney Jason Jackson
P.O. Box 308
Uhrichsville, OH 44638
For Steven Buckey

For Appellee:      Attorney Jeffrey Kiggans
Attorney David Haverfield
389 16th Street, SW
New Philadelphia, OH 44663
For Harrison County Job &
Family Services

JUDGES:
Hon. Mary DeGenaro
Hon. Gene Donofrio
Hon. Cheryl L. Waite

Dated: December 16, 2013

DeGenaro, P.J.

{¶1} Appellant-Father, Steven Buckey, appeals the decision of the Harrison County Court of Common Pleas, Juvenile Division, terminating his parental rights to S.B. and K.B., his minor children. On appeal, Steven argues that Harrison County Job and Family Services failed to use reasonable or good faith efforts to reunite him with his children and the juvenile court's decision to terminate his parental rights is against the manifest weight of the evidence. For the reasons discussed below, the judgment terminating Steven's parental rights to his minor children is reversed. The juvenile court's decision is against the manifest weight of the evidence because the Agency failed to present evidence regarding whether the children should not be placed with Steven. Accordingly, this cause is reversed and remanded for a new trial.

## Facts and Procedural History

{¶2} On January 5, 2012, a complaint of neglect, dependency, and custody was filed by the Harrison County Job and Family Services (HCJFS) related to S.B. (D.O.B 1/5/2003) and K.B. (D.O.B. 6/23/2001) in the Harrison County Juvenile Court. The complaint was based upon the following facts: The mother of the children, Rebecca Buckey Miller failed to pick up the children from school on January 3, 2012, and was unable to be located, which led HCJFS to take custody of both children. Rebecca admitted she failed to pick up the children because she had been using cocaine. On January 4, 2012, a home visit was conducted which revealed messy conditions and numerous safety concerns. The children reported that their mother had not been preparing food for them or cleaning, which led to K.B. taking on motherly roles. The complaint also cited previous reports that K.B. had been sexually abused by an elderly family member and that K.B. had been sexually inappropriate with S.B. Further, Rebecca had been involved with HCJFS and Jefferson County Children Services in the past regarding alleged drug use and instability.

{¶3} Regarding father, Steven Buckey, the complaint stated that he was then incarcerated at Trumbull Correctional Institution for aggravated robbery and aggravated burglary with a scheduled release date of December 5, 2013.

{¶4} The same day a hearing was held regarding the removal of the children in

the Harrison County Juvenile Court at which Rebecca appeared. She was informed of her rights, and stipulated to the temporary custody of the minor children to HCJFS. The juvenile court noted that Steven was incarcerated and ordered HCJFS temporary custody of both children.

{¶5} Steven's first response to the proceeding was a notarized letter filed with the court on January 26, 2012, requesting that Barbra Joe Ann Dillinger take temporary custody of his children until he was released from prison.

{¶6} On January 27, 2012, an adjudicatory hearing was held. Steven remained incarcerated and Rebecca appeared with counsel. She stipulated to both children being adjudicated neglected and dependent. Per her consent, the case proceeded immediately to disposition. The juvenile court adjudicated both children neglected and dependent pursuant to R.C. 2151.04(C) and temporary custody was continued with HCJFS. Rebecca continued to test positive for drugs as of August 2012 and Steven remained incarcerated.

{¶7} On November 15, 2012, a motion to modify disposition was filed by HCJFS seeking permanent custody because neither K.B. nor S.B. could be placed with their mother or father within a reasonable time under R.C.2151.414(B)(1)(a) and that same was in the best interests of the children.

{¶8} In an apparent response to HCJFS's permanent custody motion, on December 5, 2012, Steven filed a 'motion for judicial notice' and attached a 'declaration of specificity.' In the declaration, he assigned his parental rights over S.B. and K.B. to his mother, his sister and his ex-wife "jointly and severally" until he was released from prison on November 27, 2013.

{¶9} On December 13, 2012, a pre-trial was held on HCJFS's motion to modify disposition. The juvenile court denied Steven's motion, but without a request to do so, appointed Steven counsel. The children remained in the temporary custody of HCJFS.

{¶10} On February 13, 2013, the juvenile court held a hearing on the permanent custody motion. Rebecca was not present and Steven was still incarcerated. However, both were represented by counsel. The following testimony was presented:

{¶11} Marie Seiber, the guardian ad litem, testified that the children expressed no interest in seeing their father and did not want to live with either parent again. The children were previously in the custody of Jefferson County Children Services for fourteen months in 2008 and 2009 due to Rebecca leaving the children with another couple who did not provide a clean living environment and not filling all necessary prescriptions for S.B.'s asthma. Seiber testified, "I think by then Steve was already in prison for the aggravated robbery. " Rebecca was going on crack binges and leaving the children with the couple. Rebecca completed inpatient treatment successfully and regained custody of the children in 2009. Seiber indicated that her entire testimony was based upon reading other documents and/or reports; specifically judgment entries and the guardian ad litem report in the Jefferson County case.

{¶12} Seiber testified that after Rebecca regained custody there were a number of reports from 2009 to 2012 regarding K.B.'s sexual behavior with S.B. Rebecca would leave the children with her boyfriend or somebody else while she was out using crack. Rebecca's long-standing history of crack addiction left her unable to provide a secure place for the children. Rebecca refused in-patient treatment, had sporadic attendance at counseling appointments and did not have control of her addiction. According to reports from Rebecca's husband, she continued to leave for days at a time on crack binges.

{¶13} Seiber further explained that K.B. and S.B. suffered "significant emotional scars" from their home life. K.B. was subjected to sexual abuse and attempted to commit suicide by drowning at the age of ten, and that K.B. does not understand "boundaries with men she meets casually." Seiber understood that K.B. was first molested by "somebody's boyfriend in conjunction with the family but no names were mentioned." Further, K.B. was being left with Rebecca's uncle who Rebecca readily acknowledged molested her and other girls in the family. K.B. reported being molested by the uncle but Rebecca ignored it because she was having sex with the uncle for money. K.B. internalized her own sexual abuse and perpetuated it on others including S.B. Seiber said that Rebecca and her husband, Finley Miller, would encourage K.B.'s sexual abuse of S.B. and call K.B. "a crack whore, a slut."

{¶14} Regarding placement, Seiber testified that there were efforts made to place the children with relatives, but that could not be accomplished. K.B. was placed in an all girls group home in order to prevent contact with men. Seiber reported K.B. was one of the younger girls there but she liked it and was adapting nicely. K.B. had decent grades and participated in school activities. S.B. was placed in a foster home and was doing very well. He was diagnosed with ADHD and intermittent explosive disorder but there had been no significant problems. Seibert believed granting permanent custody to the agency was in the best interest of both children.

{¶15} Counsel for Steven next cross-examined Seiber and she admitted that she never had contact with Steven because he was in prison during the pendency of this case and her knowledge regarding him was gleaned from information in agency files. Seiber stated that no case services were recommended for Steven because it would have been impossible for him to complete them. Seiber believed that in light of the offense for which Steven was serving time, he would need serious anger management counseling and to get a job. Further, it would take "considerable case services for him to be able to obtain custody of these children." On re-direct, Seiber testified that the children never brought Steven up in conversation; however K.B. reported to her on one occasion that "dad was in prison because he had to rob a place so they would have food to eat."

{¶16} Linda Schoppe, social service worker for HCJFS, formulated the case plan in which Rebecca was required to complete individual counseling, drug and alcohol counseling, and parenting classes. Schoppe testified at length about Rebecca's failures regarding the case plan and visitation of the children.

{¶17} Regarding Steven, Schoppe never had any contact with him. She stated he was incarcerated but she 'was not sure which jail.' When asked what his release date was, she stated 'in November of 2013 according to what I had gotten off the inmate registry thing on line.' When asked when Steven was placed in jail, Shoppe stated, 'it said he had a three year sentence so if he's done in '13 I'm assuming he went in 2010.' Shoppe was asked about Steven's relationship with the children and she stated K.B. asked how he was and reported that she did not remember what he looked like. The only

thing K.B. remembered about him was that he would carry her on his shoulders. K.B. stated that Steven had robbed somebody to get them Christmas presents.

{¶18} Schoppe testified that the goal was to find adoptive placement. As of the hearing date, K.B. was in a group home called Chances Given which she liked some days. S.B. was in a group home but later moved to a foster parent who does not want to adopt. K.B. would like to be placed in a foster home with her brother, but S.B. was unsure whether he wants to live with K.B. The goal was to find the children an adoptive placement together in a home that could monitor them and keep them safe. The two relative placements, friends and family of Steven, who were investigated pursuant to Steven's request, ultimately declined placement.

{¶19} On cross-examination, Schoppe testified that if Steven were not in jail, she would have recommended an assessment for drugs and alcohol, anger management, and parenting classes as part of a case plan. She did not know of his current drug use or the last time he used. Shoppe did not contact the jail to see if any of those services were available and did not recommend any services in the case plan for him.

{¶20} Counsel for Steven asked for an extension so Steven could have services made available to him and to determine whether upon his release he would be a suitable placement for the children. The juvenile court ruled from the bench that reasonable efforts had been made and it was in the best interests of the children that permanent custody be granted to HCJFS.

{¶21} The judgment entry was filed on February 15, 2013, and on February 25, 2013, the juvenile court filed a judgment entry nunc pro tunc to reflect the correct date of the permanent custody hearing. In regards to Steven, the entry noted that: 1) he is the father of the children; 2) he was in prison at the Trumbull Correctional Institution and represented by counsel; 3) the GAL had little to say regarding him and Steven offered no witnesses or evidence; 4) due to his incarceration he was unable to care for or support the children for the foreseeable future; and finally, 5) even if Steven was released on November 23, 2013, he would have less than six weeks to work a case plan before the full two years expired on this case. Based upon its findings, the juvenile court found

reasonable efforts had been made by HCJFS to reunify the children with their parents and that it could not be done. Further, that HCJFS established by clear and convincing evidence that it is in the best interests of the children that they be placed in the permanent custody of HCJFS. Steven's parental rights were terminated, and he filed the instant appeal. Rebecca's parental rights were also terminated, but she did not file an appeal.

## Reasonable Efforts

{¶22} In his first of two assignments of error, Steven asserts:

{¶23} "The department failed to use reasonable or good faith efforts to reunite the father and the children."

{¶24} Steven argues that because HCJFS did not include him in the case plan, the agency did not use reasonable, good faith efforts to reunite him with the children. HCJFS counters that this is the first time Steven has made this argument. The adjudication and disposition hearing was held on January 27, 2012. Pursuant to a judgment entry dated February 16, 2012, the juvenile court found the children to be both neglected and dependent and further that both the best interests and reasonable efforts tests were met by HCJFS. No appeal was taken from this entry.

{¶25} Steven's only action in response to HCJFS taking temporary custody of the children was to attempt to have his parental rights delegated to either his mother, sister or ex-wife, Barbra Joe Ann Dillinger. His mother and Ms. Dillinger were contacted by HCJFS. Ultimately his mother was approved by HCJFS but withdrew her willingness to accept temporary custody of the children. Ms. Dillinger withdrew prior to the home study being completed. Steven never raised the issue of not being included in the case plan or that HCJFS failed to make reasonable efforts to reunite him with his children with the juvenile court.

{¶26} An appellate court will not consider any error which could have called to the trial court's attention at a time when such error could have been corrected or avoided by the trial court. *In re I.T.A. and A.A.*, 7th Dist. Belmont Nos. 11 BE 27, 11 BE 29, 2012-Ohio-1689, ¶17 citing *Schade v. Carnegie Body Co.*, 70 Ohio St.2d 207, 210, 436 N.E.2d

1001(1982). Moreover, because it is a final appealable order, an adjudication order of abuse, dependency, or neglect and the award of temporary custody pursuant to R.C. 2151.353(A)(2) must be filed within 30 days of the judgment entry pursuant to App.R. 4(A). *In re H.F.*, 120 Ohio St.3d. 499, 2008-Ohio-6810, 900 N.E.2d 607, at syllabus. *In re K.G.*, 7th Dist. No. 09 MA 56, 2009-Ohio-6531, at ¶28. As such Steven has waived this argument for purposes of appeal. Accordingly, his first assignment of error is meritless.

**Manifest Weight**

{¶27} In his second and final assignment of error, Steven asserts:

{¶28} "The grant of permanent custody was against the manifest weight of the evidence."

{¶29} A parent's right to raise his or her children is an essential and basic civil right. *In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990), citing *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208 (1972). However, this right is not absolute. *In re Sims*, 7th Dist. Jefferson No. 02-JE-2, 2002-Ohio-3458, at ¶23. In order to protect a child's welfare, the state may terminate parents' rights as a last resort. *Id.*

{¶30} The evidentiary standard in permanent custody cases is clear and convincing evidence. R.C. 2151.414(B)(1). "Slightly less stringent than "proof beyond a reasonable doubt," the clear-and-convincing standard carries the highest burden of proof that can be required in a civil proceeding—defined as more than a mere preponderance of the evidence, clear and convincing evidence is that which is sufficient to establish a firm belief or conviction as to the facts sought to be established." *In re J.W.,* 10th Dist. 06AP-1017, 06AP-15, 2007-Ohio-2007, ¶15, citing *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶31} As to the standard of review, "[a]n appellate court's review of a juvenile court's decision granting permanent custody is limited to whether sufficient credible evidence exists to support the juvenile court's determination." *In re G.N.*, 170 Ohio App.3d 76, 2007-Ohio-126, 866 N.E.2d 32 (12th Dist.) citing *In re Starkey*, 150 Ohio App.3d 612, 2002-Ohio-6892, 782 N.E.2d ¶16 (7th Dist.). Where a manifest weight

challenge is made on appeal, the appellate court looks at "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶12, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. "Weight is not a question of mathematics, but depends on its effect in inducing belief." *Id.* This standard of review as set forth in *Thompkins* has been extended to civil cases generally, *Eastley* at ¶17, and cases involving the termination of parental rights specifically. *See In re S. Children*, 5th Dist. No. 2012-CA-00164, 2012-Ohio-6265.

**{¶32}** Before parental rights can be terminated, an agency must prove by clear and convincing evidence that a permanent custody order is in the best interests of the child and one of the following provisions also apply: "(a) the child cannot be placed with either parent within a reasonable amount of time or should not be placed with either parent, (b) the child is orphaned, (c) the child is abandoned, (d) the child has been in the temporary custody of the agency for twelve or more months of a consecutive twenty-two month period." *In re J.Z.*, 7th Dist. Columbiana No. 08 CO 31, 2009-Ohio-1937, ¶18, citing R.C. 2151.414(B)(1)(a)-(d).

**{¶33}** Here, the children are not alleged to be orphaned or abandoned. Although they had been in temporary custody for thirteen of twenty-two months on the date the permanent custody motion was heard, the relevant date triggering this provision is the date the motion was filed by the agency. *See In re C.W.,* 104 Ohio St.3d 163, 2004-Ohio-6411, 818 N.E.2d 1176 at ¶22-26 (the court cannot use the "12 of 22" provision if the agency files the motion for permanent custody prior to the child actually being in the temporary custody for 12 months). Here, HCJFS's motion was filed prior to the expiration of twelve months. Thus, the 12 of 22 provision is inapplicable, and R.C. 2151.414(B)(1)(a) is the only remaining alternative factor to pursue permanent custody in this case.

**{¶34}** Consequently, we must determine whether the record supports the finding that the children should not be placed with Steven pursuant to R.C. 2151.414(B)(1)(a). When determining whether a child cannot be placed with either parent, the juvenile court

must find by clear and convincing evidence that at least one of the factors enumerated in R.C. 2151.414(E) exist as to each of the child's parents. R.C. 2151.414(E). "The existence of a single R.C. 2151.414(E) factor will support a finding that a child cannot be placed with either parent within a reasonable time." *In re M.P.*, 7th Dist. Columbiana No. 11-CO-4, 2011-Ohio-6372 at ¶20 citing *In re H.M.C.*, 4th Dist. No. 07CA18, 2007-Ohio-4661, at ¶35.

{¶35} R.C. 2151.414(E) contains sixteen factors for the trial court to consider when terminating parental rights pursuant to R.C. 2151.414(B)(1)(a). A review of the record in the present case reveals that extensive testimony and evidence was presented regarding the mother, Rebecca. Conversely, there is virtually nothing in the record regarding Steven.

{¶36} Although Steven was in jail during the entire proceedings, HCJFS offered no testimony or evidence as to any information surrounding this incarceration including the actual nature of his conviction, when it began and when it was to end. HCJFS admitted that Steven was not provided a case plan due to his incarceration. No testimony was presented regarding any of the other R.C. 2151.414(E) factors including whether Steven was diagnosed with mental illness; whether he committed any type of abuse towards others; whether he suffered from drug or alcohol additions; that he had abandoned the children; that he failed to provide for the children; if he was repeatedly incarcerated; or whether he was unwilling to provide food, clothing or shelter for the children.

{¶37} We must emphasize that termination of parental rights is referred to as "'the family law equivalent of the death penalty in a criminal case.'" *In re Hoffman*, 97 Ohio St.3d 92, 776 N.E.2d 485, 2002-Ohio-5368, at ¶14, quoting *In re Smith*, 77 Ohio App.3d 1, 16, 601 N.E.2d 45 (1991). Because our review is limited to the evidence in the trial court record and HCJFS presented so little evidence about Steven, it is impossible to apply the statutory factors to this case and determine whether Steven's parental rights should be terminated. As HCJFS failed to meet its burden regarding permanent custody, Steven's second assignment of error is meritorious.

{¶38} An agency seeking permanent custody must also prove that permanent

custody is in the best interests of the children. But because we have concluded that HCJFS failed to prove that one of the factors in R.C. 2151.414(B)(1)(a)-(d) warranted terminating Steven's parental rights, we decline to address whether or not it is in the children's best interest to award permanent custody to HCJFS. Our favorable resolution of Steven's manifest weight argument renders the discussion of best interests moot and dispenses with our need to address it at this time. *See generally*, App.R. 12(A)(1)(c).

**{¶39}** In conclusion, the juvenile court's judgment terminating Steven Buckey's parental rights to his minor children is reversed on the basis that it is against the manifest weight of the evidence. Accordingly, this cause is reversed and remanded to the trial court for a new trial consistent with this Court's opinion.

Donofrio, J., concurs.

Waite, J., concurs.